King, J.
The action was brought in the court of common pleas of Ottawa county, by R. W. Wilson, as the assignee of Wm. Bertsch and Wm. H. Moore, partners as Bertsch & Moore, against B. F. Dwelle, George Moore, Henry Lay, and the *552 German Amexican Bank of Port Olinton. The cause of action as set forth in the petition was founded on a bond given in an injunction proceeding.
Some time before the commencement of this action, Benjamin F. Dwelle began a suit in the court of common pleas, against Wm. H. Moore and Wm. Bertsch, individually, and as partners, in which he alleged tt at they were about to set their pound stakes and nets for fishing in Lake Erie, in such a position as to. prevent him from fishing at a place where he had acquired a right to fish by having fished there for many years, and he asked an injunction against them. The probate judge of the county, allowed a temporary injunction, enjoining Bertsch & Moore, from fishing at the place designated in the petition. Upon the filing of the petition in that case and the allowance of the injunction, the condition was made, that a bond be given in the sum of $500. This petition alleges, that that bond was given and the injunction allowed. Within a few days afterwards, a motion was made that an additional bond be given, and the matter was brought tó the attention of the court, and he ordered an additional bond in the sum of $1,500. This petition alleges, that that bond was given, with George Moore and Henry Lay, as the sureties thereon. The petition further alleges, that thereafter, it was finally decided that the injunction ought not to have been granted. It then sets forth the particular items of damage, that it claims the plaintiffs, Bertsch & Moore, sustained; first, that they were compelled to, and did, expend $275.75, in attorney’s fees, and that they had expended money in looking after the lawsuit and attending to it, to the amount of $100 or more; that they had employed a large number of men, anticipating the fishing season, and had provided nets, and pound poles, and other things necessary for fishing, in the vicinity of this particular place, .and had expended for these things and for the wages of the men that they had employed, $1,000; *553 and if they had been allowed to go on and set and fish, as they calculated to the string of nets, they would have caught fish that would have been worth,- ard made a profit to them, of $2,500; that they were after that, obliged, in order to use these nets, to put their nets in a place very much further out in the lake, and further away, and it took a great deal longer to go to the place, and had to employ additional tugs, and it took a longer time, and damages are claimed for that. There are other items of damage which I need •not go over.
There was an answer filed, denying all these allegations, substantially.
The case went to trial. A verdict was rendered by the jury in behalf of the plaintiff, who had become assignee of Bertsch & Moore, after the injunction and before the commencement of this suit, in the sum of $1,200; and it is claimed there are errors in that. It is urged by the- defendant in error, the assignee of Bertsch & Moore, that any errors that are set forth in the bill of exceptions cannot be considered, because the bill of exceptions has not been allowed properly, I notice that briefly.
The bill of exceptions in this case, shows that it was signed by the judge of the court of common pleas who presided at the trial, on the 5th day of June, 1897, on the fiftieth day after the overruling of the motion for a new trial. He recites above his signature, that “Plaintiff objects and excepts to the allowance and signing of said bill at this date, upon the ground and claim that jurisdiction to allow and sign the same, has been lost by lapse of time.” But he signed on the fiftieth day. Below his signature, appears this statement:
“The foregoing bill of exceptions submitted to us for- examination by defendant’s attorneys, this 27th day of May, A. D. 1897.
Scott Stahl,
E. G. Love,
Plaintiffs’ Attorneys.”
*554 Then, also, a receipt of defendant’s attorney, that he received the bill of exceptions back again. This endorsement is made on the bill:
‘Received this bill of exceptions from defendant’s attorney, W. B. Starbird, June 1, 1897, and time extended for examination by me, to June 10, 1897.
June 1, 1897. S. A. Wildman, Judge.”
It is conceded that the 27th day of May, when this receipt recites that the attorneys of the plaintiff received the bill, was the forty-first day after the overruling of the motion for a new trial, and that the time stated in the endorsement of the judge when he received the bill, is on the forty-sixth day after the overruling of the motion for a new trial.
It is contended that the statute requires bills of exception to be in the hands of opposite counsel, on or before the fortieth day after the overruling of the motion for a new trial, and in the hands of the judge for his allowance, on or before the forty-fifth day after the overruling of the motion for a new trial. Such is the statute, and the holding of the supreme court; but the law does not indicate how these facts are to be ascertained. And we are of opinion, that it does not appear from this bill of exceptions by anything that we may regard, that this bill of exceptions either came into the hands of plaintiffs’ counsel, or into the hands of the court at a time later than that fixed in the statute. There is no provision of the statute by which the evidence of the time when the bill of exceptions is presented to opposite counsel may be preserved, nor is there as to the time when it goes into the hands of the judge. The provision of the statute as to the extension of time is, that the judge may endorse upon the bill of exceptions, an extension of time for his examination, not exceeding ten days beyond the expiration of fifty days, previously provided for, but it does not authorize him to endorse upon the bill when he received it. There is no provision of the statute for that pur *555 pose, nor, "as I have^said, is tbere^any^provision^of law by which evidence of that may|be"preserved^and’presented to a reviewing court. We do not say, that]ievidence of it may not be preserved in a proper method, but that method has not been pursued here,
I should say in that connection, that on the 22d day of July, 1897, there was presented to”the judge of the court of common pleas who signed and allowed the bill of exceptions, another bill of exceptions to the signing and allowing of the original bill of exceptions.
This proceeding, as appears from the reading of this bill of exceptions, was a proceeding before the judge. Nobody but a judge can allow and sign a bill of exceptions; it is not a matter for the court. So on the 5th of June, as appears by this paper, there was objection made to signing and allowing the first bill of exceptions by the judge, and it was there conceded that the facts stated before the judge were true, yet the judge allowed and signed that, notwithstanding those objections; and now they have presented this bill of exceptions. There is no provision for taking a bill of exceptions in a matter considered alone by the judge, so that this bill of exceptions has no place upon the record whatever. It is impossible to take a bill of exceptions to the consideration by the judge of the question, whether he shall sign another bill of exceptions, consisting of facts occurring in a trial court. So that the facts stated in the second bill, do not aid the objectors to this bill of exceptions in presenting properly to this court, the question which they seek to make. Therefore, we hold that the first bill of exceptions is to be considered with the balance of the record.
There have been, by counsel for plaintiff in error, a great many objections urged to this judgment. — First: That the petition does not set forth sufficiently the items of damages. In our judgment, that objection is hardly tenable. It sets forth a great many items of damages that probably the plain *556 tiff was not entitled to recover upon. If it has any objection, it is in too great particularity, rather than in too little.
Second: It is claimed that the petition shows upon its face, that there was an original bond for $500 given, and that it must be sued, either before or at the same time, with the additional bond of $1,500, which was alone sued upon in this case. But the answer does not set that up as a defense. The answer admits the allegations of the petition in that respect, and says nothing further about it. There is nothing in the record to show that the original bond was signed by different or other individuals, than the additional bond. Had there been an}' defense made in the case, showing a liability of others not made parties, our present opinion is, that it would have been necessary to at least join the makers of the original bond with those in the additional bond. But that defense is not made; and nothing appears to show that the makers of the one are not the makers of the other, the two bonds being simply different in amount. So we think that objection is not good.
There are other objections urged in the case, all of which we conilude are not well taken, except one which we shall notice. On the trial of the case, it became a question how much damages the plaintiffs below had sustained by reason of their being enjoined from fishing at the place which they alleged they were enjoined from fishing, and considerable evidence was offered upon that subject. Among other questions asked to prove that damage were these, which appears on page 6:
Q. Mr. Moore, considered in connection with the fishing plant with which these nine nets were used, you may state whether or not, their use for the spring season of 1893, had any general market value for fishing at the point where you were enjoined from fishing them? (Objected to; objection overruled; defendant excepts.) A. No, sir; I don’t think there was any market .value.
*557 Q. Considered in connection with the fishing plant with which these nine nets were used, and the hazards and chances of the business to which they were devoted, you may state what, if anything, was the fair value of their use for the balance of the spring fishing season, after you were enjoined. (Objected to; overruled; defendant excepts.) A. It would be pretty hard work to tell to a dollar. I should say at least, it would be $1,500.
Another witness, Mr. Hanlon, testified that it would be $100 a net, or about $900 for the season. That testimony was admitted, and went to the jury. One testified that those damages, based on the use of the nets at the points in question, would be $1,500; the other testified that they would be $900. The court submitted the question of damages to the jury, by saying, substantially, that the question was one for them to determine. The other items were all ruled out, and the plaintiffs were not permitted to show anything on that subject, except the questions and answers which I have read. In addition to that, I should say, it was shown that the plaintiffs had expended in attorney’s fees, substantially $200, and for their own expenses in procuring the injunction to be dissolved, $100, making $300 in all, and that testimony was not disputed by any of the witnesses.
The question upon which we think -the correctness of this verdict turns, is whether this evidence as to these damages was correctly admitted. The matter has occasioned us considerable trouble, and we have given to it careful study. We have attempted to look up the authorities, but we find a great scarcity of them in the books. There are many cases brought for damages for depriving one of his right to fish in water where the plaintiffs had some interest in the land or in the water,either owning the land under the water, or had a right given him by the government, or acquired by prescription'; but no case that we have been able to find, *558 directly passing-upon the question of damages, where one owned neither a right in the land, nor in the water, having no property either in the land, the water, or the fish. The right to fish in Lake Erie, is settled in Sloan v. Beimiller, 34 Ohio St., 492, where it is held, that no right can be acquired by purchase, and I take it as well none can be acquired by prescription, and holding such right to be free and common to the public.
, Here was a case where there was no right to fish at a particular place owned by either party, but one of them goes into court and enjoins the other from fishing. He might have included in his injunction, the whole of the shore from Toledo to Sandusky; he did include in it only a small part of that shore, substantially that part of the shore of which the plaintiff in that case, said he owned the land abutting upon it, that is, the land abutting upon the water at that place, and trying to prevent anybody from fishing in front-of his land. He might as well have enjoined them from-fishing on any other part of the shore. But what would be the damage from that kind of an injunction, when it has been repeatedly held by the courts, and was so held in this case, that the right of fishing at that place, is public and common to all, and no man could' acquire a right superior to any other, except he had gone into the common water, and set and established his pounds and stakes, and taken possession of the line which those pounds and stakes included, whereby a stranger would then have no right to interfere with those pounds and stakes. But, suppose one of these gentlemen who was engaged in fishing, had set another line of pounds and stakes parallel with Dwelle’s, and extended it around the end of his line, cutting him off entirely, would he have an action for damages? As is claimed in the Dwelle petition, that is about what Bertsch & Moore were about to do. They were running their line out and into the water in that direction, and when beyond where, *559 Dwelle had his pound, they were going around the end and cut him off. Suppose they had gone clear around, would Mr. Dwelle in that case, have had an action for damages, irrespective of the right of injunction? Certainly he would not. This being so, if Dwelle had secured a court to give a temporary injunction enjoining defendant from doing that very act, would the bond for injunction be liable for that class of damages, which Mr. Dwelle, himself, could not have recovered? We think there is no question about it, We think that class of damages cannot be included in the damages to be recovered on that bond, any more than it could in a direct action for damages. If the injury which he anticipated actually occurred, the authorities say, damages can be recovered by one who has a right or interest in the land, or in the water.
Referring to the Encyclopaedia of Law, vol. 8, p. 23, we find a definition of what is a common fishery, or a fishery common to all, and they say:
“It is settled that a right of fishery in navigable or tide waters, below high-water mark, is a common right; and if one or more individuals, set up an exclusive fight to a free or several fishery, it must be clearly established by prescription or positive grant. ■ ’
Again, in 1 Enc. of L., p. 571-2, is a discussion of the right of property in wild animals, we find this reference,. but have not been able to find the case:
■ “Where the plaintiff, while fishing, cast a seine around a shoal of mackerel, with the exception of a - small opening which the seine did not quite fill up, and where the defendant entered and took the fish, it was held that the plaintiff’s possession was not-complete so as to enable him to maintain an action for trespass. Young v. Hichens, 6 Cad. & El., N. S., 606.’’
In 48 Hun., 396, is a discussion of the right of damages for taking ice; but in that case,fasjappears from the state *560 ment of it, the plaintiff, who claimed to have been damaged by having her ice taken away, owned the land under the water of the Hudson river. The court say this in the syllabus:
“That, as the action was brought to recoverd amages against the defendant for a wrongful entry upon the lands of the testatrix, and the cutting and removing of ice, the right of action depended upon, whether the cutting and removing of the ice could be regarded as an injury to the real estate, and that the amount of the recovery must be such as to compensate for such injury only. ’’
The case was tried to a referee, and he allowed witnesses to state the market value of ice which had been cut and stored for sale, but the court adopted a different rule of damages, and judgment was reversed, because they held it must be only such damages as cculd be shown to the real estate.
But it is clear in Ohio, in case of land bounding on Lake Erie, no right of action can be maintained for taking ice out of the latter, even although it was in front of one’s premises, running down to the line of the water. Nor can' any right of action be maintained for fish taken out of the water.
These questions in the case at bar, called for the value of the use of the nine nets. It is claimed that Bertsch & Moore had nine pound nets, or nets for nine pounds, which they intended to put in this string, which . they did not get a chance to put out because of this injunction. They had eighteen nets, and they succeeded in planting nine of them, when they were enjoined, and the other nine they did not put out. They say there were nine; they might just as well have had nine hundred as nine. It comes to this: that if one shall lay in stakes, nets, and poles, and hire men, secure boats and tugs, for the purpose of carrying on a fishing business in water that is common to all the public, and *561 somebody interferes with his fishing, he may recover as damages the value of the use of his property, so provided. We do not think that he was entitled to recover damages for that; we do not think that a case could be made that would enable him to recover more than nominal damages for an injunction that would prevent him from fishing at a particular spot in Lake Brie; and that all that part of the evidence in the case that went to the jury, under the charge of the court directing them to determine how much the damages would be, was erroneous — not only the admission of the testimony, but the charge of the court was prejudicial to the defendant below.
Stahl & Love, for Plaintiffs in Error.
Seney, Wickham, Starbird & True, for Defendants in Error.
That is the only controverted issue in the case. As to the plaintiffs’ actual expenses there is no controversy. We think the testimony shows that they expended in attorneys’ fees and other expenses, $300. For the admission of this improper evidence and the charge of the court upon that evidence, the case must be reversed, unless the plantiff below elects to remit all over $300 of the judgment,